UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| AJAX MORTGAGE LOAN TRUST 2019-E, MORTGAGE-BACKED SECURITIES, SERIES 2019-E, BY U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, | ) ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:21-cv-00018-JAW ) |
| APRIL J. SARGENT F/K/A APRIL J. WOHLFEIL, | ) ) ) |
| Defendant, | ) ) |
| KEVIN A. SARGENT, | ) ) |
| Party-in-Interest. | ) |

**ORDER ON MOTION TO PROCEED WITH
DEFAULT JUDGMENT OF FORECLOSURE**

The Court first concludes that the eviction moratorium, if it still exists, does not apply to this foreclosure action. The Court next concludes that a plaintiff may satisfy the amount in controversy requirement of 28 U.S.C. § 1332 by including an estimate of reasonable attorney's fees to be incurred on behalf of the plaintiff in proceeding with the foreclosure action.  However, the Court defers a final order on this issue because of an apparent error in the attorney's fee invoices submitted by plaintiff's counsel.

## I. BACKGROUND

On January 13, 2021, Ajax Mortgage Loan Trust 2019-E, Mortgage-Backed Securities, Series 2019-E, by U.S. Bank National Association, as Indenture Trustee (Ajax) filed a foreclosure complaint against April J. Sargent f/k/a April J. Wohlfeil and named Kevin A. Sargent as a party-in-interest. *Compl.* (ECF No. 1). Ajax seeks a judgment of foreclosure and sale under 14 M.R.S. § 6322, Maine's foreclosure statute. *Compl.* at 11. Ajax served Ms. Sargent and Mr. Sargent on January 22, 2021, and filed proof of service as to both on January 25, 2021. *Proof of Service as to Kevin A. Sargent* at 2 (ECF No. 6); *Proof of Service as to April J. Sargent* at 2 (ECF No. 7).

On March 31, 2021, Ajax filed a motion for entry of default as to Ms. Sargent and Mr. Sargent. *Pl.'s Mot. for Entry of Default as to April J. Sargent f/k/a April J. Wohlfeil and Kevin A. Sargent* (ECF No. 10). On April 1, 2021, the Deputy Clerk of Court granted Ajax's motion for entry of default. *Order Granting Mot. for Entry of Default* (ECF No. 11). On June 2, 2021, Ajax filed a motion for default judgment as to Ms. Sargent and Mr. Sargent. *Pl.'s Mot. for Default J.* (ECF No. 13). On June 3, 2021, in light of the public health threat presented by the COVID-19 pandemic, the Court issued a procedural order authorizing Ajax to seek a default judgment on documentary evidence. *Foreclosure Procedural Order Authorizing Pl. to Seek a Default J. on Documentary Evid.* (ECF No. 16). On July 1, 2021, Ajax moved for entry of default judgment on documentary evidence. *Pl.'s Mot. Requesting the Ct. Enter*

*Default J. on Documentary Evid. as to April J. Sargent f/k/a April J. Wohlfeil and Kevin A. Sargent* (ECF No. 17).

On July 12, 2021, the Court issued an order to show cause after reviewing Ajax's filings. *Order to Show Cause* (ECF No. 18). In the order the Court requested that Ajax address two concerns before considering entry of default judgment. *Id.* at 2. First, the Court ordered Ajax to address whether the property at issue is subject to the federal foreclosure moratorium, and if the property is subject to the moratorium, how the Court should address the issue. *Id.* at 2. Second, the Court ordered Ajax to address whether its lawsuit meets the amount-in-controversy requirement of 28 U.S.C. § 1332. *Id.* at 2-3. Specifically, the Court noted that the Complaint alleges that the value of the property is $131,000, and therefore the amount in controversy requirement is satisfied. *Id.* at 3 (citing *Compl.* ¶ 2). However, the Court also observed that the Complaint also alleges the total amount due on the mortgage and note is only $71,861.75, and if that figure, not the value of the secured premises, controls, the Court would be without jurisdiction. *Id.* at 3-4 (citing *Compl.* ¶ 17).

## II. THE PLAINTIFF'S RESPONSE

In response to the Court's first concern, Ajax argues that the federal foreclosure and eviction moratorium "does not apply to the Sargent loan as it is a conventional loan owned by the Ajax Mortgage Loan Trust 2019-E." *Pls. Res. to Order to Show Cause July 12, 2021* at 1 (ECF No. 23) (*Pls. Resp. to Order*). Ajax further asserts that even if the moratorium did apply, the foreclosure moratorium expired,

as announced by the United States Department of Housing and Urban Development (HUD) in a letter dated July 30, 2021.

As to the second concern, Ajax responds with two arguments. First, Ajax contends that "in an action which seeks foreclosure of the right of redemption of a mortgage loan, the value of the asset is the correct measure of Jurisdiction." *Id.* at 2. Because the property itself is worth more than $75,000, the amount in controversy requirement is met. *Id.* at 8. Ajax asserts that because a mortgagor's rights terminate when the statutory period of redemption ends, the mortgagee could purchase the property at the sale, which means that the amount in controversy should be the assessed value of the property. *Id.* Ajax further argues that even if the amount in controversy was the amount owed on the mortgage, because "the amount due on Sargent Mortgage Loan as of July 31, 2021 is $82,112.98, and the projected amount due at the time of sale is $85,612.98, even if interest is excluded, the amount under the loan is sufficient to establish jurisdiction in this matter." *Id.* at 2.

### III. DISCUSSION

#### A. Foreclosure Moratorium

In its order to show cause, the Court asked Ajax to clarify whether the HUD foreclosure moratorium applied in this case, and, if it does, how the court should proceed. On June 25, 2021, HUD extended "the foreclosure and eviction moratorium . . . for Borrowers with FHA-insured Single Family mortgages for an additional period through July 31, 2021." *Mortgagee Letter 2021-15*, U.S. DEP'T OF HOUSING AND URBAN DEVELOPMENT at 1 (June 25, 2021). On July 30, 2021, HUD released another letter

stating that "HUD's foreclosure moratorium is set to expire on July 31, 2021, and HUD is not extending that moratorium further. Accordingly, foreclosures of FHA-insured mortgages may be initiated or resumed upon the expiration of the foreclosure moratorium in accordance with FHA requirements." *Mortgagee Letter 2021-19*, U.S. DEP'T OF HOUSING AND URBAN DEVELOPMENT at 2 (June 25, 2021).

The HUD letters confirm that the foreclosure moratorium only applies to FHA-insured mortgages. Ajax points out that, based on the language from the HUD's letter, conventional loans, or loans not backed by the federal government, are not included in the foreclosure moratorium. Given that there is nothing in the mortgage note to suggest that the Sargents' loan is backed by the FHA, the Court agrees the HUD foreclosure moratorium does not apply. *See Compl.* Attach. 2, *Note*, at 1-3.[1]

## B. Amount in Controversy

Article III of the United States Constitution establishes federal courts as courts of limited and specific jurisdiction, *Klimowicz v. Deutsch Bank Nat'l Tr. Co.*, 907 F.3d 61, 64 (1st Cir. 2018) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994)); *Restoration Pres. Masonry Inc. v. Grove Eur. Ltd.*, 325 F.3d 54, 59 (1st Cir. 2003) (citing *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 101 (1998)), and, therefore, "[i]n every case, [a federal court is] required to satisfy [itself] of jurisdiction." *Milford-Bennington R.R. Co. v. Pan Am Rys., Inc.*, 695 F.3d 175, 178 (1st Cir. 2012). Federal

---

[1] On August 3, 2021, Director Rochelle P. Walensky of the United States Centers for Disease Control and Prevention issued an order, extending the eviction moratorium. https://www.cdc.gov/coronavirus/2019-ncov/covid-eviction-declaration.html. However, on August 26, 2021, the United States Supreme Court ruled that "[i]f a federally imposed eviction moratorium is to continue, Congress must specifically authorize it." *Ala. Ass'n of Realtors v. HHS*, 2021 U.S. LEXIS 3679 (2021). The Supreme Court vacated a stay that the district court had imposed in anticipation of appeal.

courts have subject matter jurisdiction when the parties are "citizens of different states" and the "matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a). Here, it is undisputed that the parties are domiciled in different states, *Compl.* ¶¶ 4-5, thus, whether the Court has proper subject matter jurisdiction hinges on the amount in controversy. "The federal plaintiff carries the burden to establish that the minimum amount in controversy has been met." *Abdel del Aleem v. OPK Biotech LLC*, 665 F.3d 38, 41-42 (1st Cir. 2012). "Courts determine whether a party has met the amount-in-controversy by 'looking to the circumstances at the time the complaint is filed.'" *Spielman v. Genzyme Corp.*, 251 F.3d 1, 5 (1st Cir. 2001) (quoting *Coventry Sewage Assocs. V. Dworkin Realty Co.*, 71 F.3d 1, 4, 8 (1st Cir. 1995)).

In determining the amount in controversy "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* However, "if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, the suit will be dismissed." *Stewart v. Tupperware Corp.*, 356 F.3d 335, 338 (1st Cir. 2004) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). "[I]t is well established that the amount in controversy is measured by the value of the object of the litigation," *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977), or rather, "by the judgment's pecuniary consequences to those involved in the litigation." *Richard C. Young & Co. v. Leventhal*, 389 F.3d 1, 3 (1st Cir. 2004). In this

6

case, the question central to the Court's inquiry is whether the "value of the object of the litigation," *Hunt*, 432 U.S. at 347, is the assessed value of the property or the value owed under the note.

### 1. Whether the Amount in Controversy is Determined by the Value of the Property or the Amount Owed Under the Note

Here, Ajax contends that the amount in controversy is determined by the assessed value of the property rather than the amount owed on the loan. *See Compl.* ¶ 2. However, whether the amount in controversy is determined by the value of the property or the value of the note depends on the potential pecuniary consequences to those involved in this litigation. *See Leventhal*, 389 F.3d at 3. Because Ajax seeks to foreclose on and sell the property, Ajax's potential pecuniary consequences are determined by the Maine state foreclosure statute under which Ajax seeks recovery. *See Fed. Nat'l Mortg. Ass'n v. Ferland*, 2021 U.S. Dist. LEXIS 137708 at * 5 (D. Me. July 23, 2021) (stating that 14 M.R.S. § 6322 resolves whether the property value satisfies the amount in controversy).

#### a. Maine's Foreclosure Statute

Under Maine law, if a court finds that a mortgagor has defaulted under their mortgage contract the mortgagee may proceed with a sale under section 6323 of the statute. 14 M.R.S. § 6323(1). The entry of judgment of foreclosure then triggers a ninety-day redemption period during which the mortgagor may redeem the mortgage and avoid a foreclosure sale. *Id.* §§ 6322, 6323. If the redemption period expires without the mortgagor having redeemed the mortgage, "any remaining rights of the

mortgagor to possession terminate" and the mortgagee may hold a foreclosure sale. *Id.* § 6323(1).

At the foreclosure sale, the "mortgagee shall sell the premises to the highest bidder at the public sale." *Id.* In distributing the proceeds of the sale, the mortgagee shall (1) deduct expenses incurred in conducting the foreclosure sale; and (2) "disburse the remaining proceeds in accordance with the provisions of the judgment." *Id.* § 6324. Any surplus leftover after the judgment is satisfied "must be paid to the mortgagor." *Id.*

### b. Whether Ajax Could Recover the Assessed Value of the Property in This Litigation

"It is a legal certainty that [a mortgagee] cannot recover more than the amount it is permitted to recover under the foreclosure statute, regardless of the Property's market value." *See Ferland*, 2021 U.S. Dist. LEXIS 137708 at *5. As a result, even if Ajax were to sell the Property at the foreclosure sale for the assessed value of $131,000.00, Ajax would have to disburse any surplus to the Sargents pursuant to section 6324. Thus, Ajax can never recover more than the amount owed on the note, including reasonable associated costs. Because Ajax cannot recover more than what is owed by the Sargents under section 6322, the Court concludes "to a legal certainty" that Ajax cannot recover the full assessed value of the property of $131,000.00. *See id.* at *6. Thus, the assessed value of the property, which exceeds the amount the Sargents owe to Ajax, is an improper basis for determining the amount in controversy.

This result is consistent with recent precedent from this District where Chief Judge Levy rejected an identical argument under nearly identical circumstances. *See Ferland*, 2021 U.S. Dist. LEXIS 137708 at *2, *6 (rejecting the same argument in a case where the plaintiff, which sought to foreclose on and sell a residential property, argued that the amount in controversy was the alleged value of the house ($141,288) rather than the amount due on the note and mortgage ($56,308.32)).

Ajax attempts to differentiate this case from *Ferland* on the grounds that "the complaint allegations concerning the debt in this case were near the threshold." *Ferland*, 2021 U.S. Dist. LEXIS 137708 at *5. However, the Court knows of no precedent, statute, or Federal Rule of Civil Procedure that gives a federal court subject matter jurisdiction when the alleged amount in controversy, is near, but does not exceed, the $75,000 threshold and where it is clear to a legal certainty that the plaintiff's pecuniary interests in the litigation do not exceed $75,000. *See Ins. Brokers West, Inc. v. Liquid Outcome, LLC*, 874 F.3d 294, 299 (1st Cir. 2017) ("It is therefore certain as a matter of law that IBW cannot recover more than $75,000. In order to discharge our duty 'to police the border of federal jurisdiction,' (quoting *Spielman*, 251 F.3d at 4), we must affirm the district court's dismissal"); *Soprema, Inc. v. Workers Corp.*, No. 06-1565 (JP), 2007 U.S. Dist. LEXIS 33537, at *6 (D.P.R. Apr. 20, 2007) (granting motion to dismiss when the amount in controversy was equal to $74,088.49). Indeed, federal courts have dismissed diversity-based claims for failure to comply with the amount in controversy requirement when the plaintiff alleged $75,000 in damages because the statute requires that the amount exceed $75,000.

C.A. WRIGHT, A.R. MILLER & E.H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3701 (2011 ed.) ("This provision states that in actions based on diversity jurisdiction, the amount or value of the matter in controversy must exceed $75,000, exclusive of interest or costs. An allegation of exactly $75,000, therefore, is insufficient"). Moreover, this Court cannot ignore the factual and legal similarities between *Ferland* and this case, nor the fact that *Ferland* is the considered judgment of a respected judge of this District.

Rather than follow *Ferland*, Ajax relies on *Everest v. Bank of Am.*, 2015 ME 19, 111 A.3d 655, and language from 14 M.R.S. § 6323. *Pls. Res. to Order* at 5-7. Ajax argues that "[i]f the property is sold to the mortgagee at the auction sale following the expiration of the equity of redemption, the Mortgagee, as the highest bidder . . . will own the property outright and the value of the property is whatever is assessed, appraised or can be used or resold for." *Id.* at 6. Ajax seems to suggest that, because the right of redemption has lapsed and Ajax, as the mortgagee, could purchase the property at the foreclosure sale (thus owning the property outright) the assessed value of the property is the proper amount in controversy.

While Ajax recognizes that a borrower is entitled to any surplus from the sale, Ajax states that the borrower "is only entitled to the surplus monies in the event of a third-party sale." *Id.* at 7. However, Ajax cites no support for this proposition, nor is it supported by section 6324 of Maine's foreclosure statute. The statute merely states that "*[a]ny* surplus must be paid to the mortgagor," § 6324 (emphasis added), which suggests that the obligation to return surplus to the mortgagor applies regardless of

10

who the buyer is at the foreclosure sale. Thus, because all surplus must be returned to the mortgagor, Ajax's "pecuniary consequence . . . [in this] litigation," *Leventhal*, 389 F.3d at 3, will never exceed the amount owed by the Sargents, regardless of the assessed value of the property and regardless of whether Ajax purchases the property at the foreclosure sale. *See Ferland*, 2021 U.S. Dist. LEXIS 137708 at *6 (rejecting plaintiff's argument on the same grounds). The assessed property value is therefore an improper measure for determining the amount in controversy in this case.

### 2. Whether Ajax Meets the Amount in Controversy at the Time of Filing Based on the Value Owed on the Note

Given that the Court rejects Ajax's argument that the amount in controversy is the assessed value of the Property, the Court is left to determine the proper measure of the amount in controversy. Here, Ajax argues that even if the Court does not accept that the assessed value of the property as the proper measure, "where, as here the amount due on the Sargent Mortgage Loan as of July 31, 2021 is $82,112.98, and the projected amount due at the time of sale is $85,612.98, even if interest is excluded, the amount due under the loan is sufficient to establish jurisdiction in this matter."[2] *Pls. Res. to Order* at 2. However, Ajax's argument that the current amount due on the loan ($82,112.98) or the projected amount due at the time of sale ($85,612.98) are proper bases for determining the amount in controversy is incorrect.

---

[2] According to the affidavit from Julia Rust in support of Ajax's response to the Court's order to show cause, the $82,112.98 sum includes "[t]otal [d]ue as of July 31, 2021 including attorney costs and fees approved but unpaid." *Pls. Res. to Order*, Attach. 1, *Aff. of Julia Rust in Support of Resp. to Order to Show Cause*, at 2 (*Rust Aff.*). The $85,612.98 estimate includes "projected costs of Foreclosure and Sale (does not include advances for taxes or insurance that will accrue during the redemption period)." *Id.* The "[t]otal excluding incurred but unpaid attorney costs and fees" is $79,133.98. *Id.*

11

It is well established that the amount in controversy for the purposes of subject matter jurisdiction is established at the time of filing. *See Spielman*, 251 F.3d at 5; *Betances v. Sea-Land Serv.*, 248 F.3d 40, 45 (1st Cir. 2001) ("The critical time for determining the existence *vel non* of the amount in controversy is the inception of the suit, i.e., the time of filing"). As a result, the Court must look to the amount owed on the loan at the time of filing to determine whether Ajax has met the amount in controversy requirement.

In the Complaint, Ajax alleges that Sargent entered into a loan agreement for $71,700. *Compl.* ¶ 8. At the time of filing, the total debt owed on the note was $71,861.75 (including a principal balance of $63,929.64 and interest of $6,190.52). *Compl.* ¶ 17. While there is some dispute as to whether the amount in controversy for a mortgage note should be based on the face value of the loan or the principle balance, *see McKenna v. Wells Fargo Bank*, 693 F.3d 207, 212 (1st Cir. 2012), Ajax would not meet the amount in controversy requirement of more than $75,000 regardless of whether the Court were to use the face value of the loan ($71,700) or the balance owed at the time of filing ($71,861.75) in determining the amount in controversy at the time of filing. Thus, because Ajax could never recover more than $71,861.75 at the time of filing, Ajax does not meet the amount in controversy requirement to a 'legal certainty' based on either the face value of the loan or the principal balance.

### 3. Whether Ajax's Attorney's Fees Affidavit may be Considered in Calculating Amount in Controversy

Finally, the Court is left to determine whether attorney's fees that have already been expended in litigation can boost Ajax over the amount in controversy threshold. *See Ferland*, 2021 U.S. Dist. LEXIS 137708 at *8-9 (addressing the same issue). Generally, "attorney's fees are excluded from the amount-in-controversy determination." *Spielman*, 251 F.3d at 7. However, attorney's fees may be included in calculating the amount in controversy "when a statute mandates or allows payment of the fees." *Id.*; *Romulus v. CVS Pharm., Inc.*, 770 F.3d 67, 81, n.15 (1st Cir. 2014) ("We have held that attorneys' fees are generally not considered when calculating the amount in controversy except where provided by contract or explicitly allowed by statute"). Section 6101 of Maine's foreclosure statute states that "if the mortgagee prevails, the mortgagee . . . may charge a reasonable attorney's fee." 14 M.R.S. § 6101. Thus, Maine's foreclosure statute falls within the four corners of the exception, allowing attorney's fees to be included in the amount in controversy.

In *Ferland*, Chief Judge Levy, relying on *Allstate Insurance Co. v. Chretien*, No. 1:12-CV-38-DBH, 2012 U.S. Dist. LEXIS 179961 (D. Me. Dec. 20, 2012), stated that a party must estimate attorney's fees with "sufficient particularity." *Ferland*, 2021 U.S. Dist. LEXIS 137708 at *9; *see also Spielman*, 251 F.3d at 5 (quoting *Dep't of Recreation and Sports v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991) stating that the amount in controversy must be alleged "with sufficient particularity"). The Court further stated that "other courts routinely require estimates of attorney's fees to be set forth in affidavits or other summary judgment-type evidence when attorney's fees are being asserted to support federal jurisdiction." *Ferland*, 2021 U.S. Dist.

13

LEXIS 137708 at *9 (citing *Singh v. Glenmark Phargenerics, Inc.*, No. 2:14-cv-154-GMN-CWH, 2014 U.S. Dist. LEXIS 118926, 2014 WL 4231364, at *2 (D. Nev. Aug. 26, 2014); *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1068 (D. Ariz. 2004); *Surber v. Reliance Nat'l Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000)).[3]

While the amount in controversy is determined at the time of filing, *see Betances*, 248 F.3d at 45, when the amount in controversy is challenged, the party seeking to invoke jurisdiction "may meet [its] burden by amending the pleadings or by submitting affidavits." *Spielman*, 251 F.3d at 5 (quoting *Dep't of Recreation and Sports*, 942 F.2d at 88). Allowing a party to submit such an affidavit after filing is further supported by the Court's need to balance the competing interests of "polic[ing] the border of federal jurisdiction" while at the same time determining jurisdiction "quickly, without extensive fact-finding inquiry." *Id.* at 4; *id.* at 4-5 ("To make the 'which court' decision expeditiously and cheaply, a judge must simplify the inquiry . .

---

[3] There is another underlying issue: whether a court may consider only attorney's fees incurred as of the date of filing or may consider a reasonable estimate of future attorney's fees. In *Cherelli v. Instore Grp.*, No. 18-cv-10717-DPW, 2021 U.S. Dist. LEXIS 4393 (D. Mass. Jan. 11, 2021), a district court recently observed that "[t]he First Circuit has yet to rule on this question." *Id.* at *5-6 (citing *Mitchell v. Select Comfort Retail Corp.*, No. 20-cv-10110-DCJ, 2020 U.S. Dist. LEXIS 126735, at *3 (D. Mass. July 20, 2020)). In *Cherelli*, the district court cited two district court opinions arriving at different conclusions on this point: *Barbuto v. Advantage Sales & Mktg., LLC*, 148 F. Supp. 3d 145, 148 (D. Mass. 2015) and *Raymond v. Lane Constr. Corp.*, 527 F. Supp. 2d 156, 163 (D. Me. 2007). As *Raymond* is this Court's opinion, the Court will follow its own lead for the sake of consistency, while conceding that the First Circuit has not yet spoken.

If *Barbuto*, not *Raymond*, is correct, the Plaintiff in this case has not met the jurisdictional limit. As noted earlier, the correct measure of the amount in controversy based on the amount due on the note alone as of the date of filing is $71,700 at a minimum. To exceed $75,000 under *Barbuto*, the Plaintiff must demonstrate attorney's fees equal to $3,301 as of the date of filing. By this Court's calculation, the Plaintiff demonstrated only $2,735.55 in attorney's fees and expenses as of January 13, 2021, the date of filing, leaving the Plaintiff still shy of an amount in controversy exceeding $75,000. *See Pls. Res. to Order*, Attach. 4, *Aff. of Reneau J. Longoria in Support of Resp. to Order to Show Cause*; Attach. 5, *Invoice* (Jan. 26, 2021). However, the Court is applying *Raymond*, which allows a plaintiff to make an estimate of future attorney's fees so long as the estimate is reasonable, and here, the estimate of reasonable fees likely takes the amount in controversy in this case safely over the $75,000 threshold.

14

. .." (quoting *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 352 (7th Cir. 1995))); *see also Romulus*, 770 F.3d at 76 (stating that requiring investigation into jurisdiction, "rather than analyzing what [is] apparent on (or easily ascertainable from) the face of the plaintiff's pleadings, will not be efficient, but will result in fact-intensive mini trials"). Furthermore, "courts routinely consider future damages, such as pain and suffering, medical bills, and lost wages [so] [a] rule that treats attorney's fees differently . . . for the purposes of ascertaining the amount of the 'matter in controversy' draws no support from the language of the statute." *Raymond v. Lane Constr. Corp.*, 527 F. Supp. 2d 156, 163 (D. Me. 2007). The exception to this general rule is if the party invoking jurisdiction engages in a "transparent attempt to puff up future attorney's fees to cross the jurisdictional threshold." *Id.*

While Ajax did not provide an estimate of attorney's fees at the time of filing, it did ask for an award of attorney's fees in its Complaint and it subsequently provided an affidavit estimating of those fees when the Court questioned jurisdiction. *See Compl.* at 13; *Pls. Res. to Order*, Attach. 4, *Aff. of Reneau J. Longoria in Support of Resp. to Order to Show Cause* (*Longoria Aff.*); *Rust Aff.* Thus, Ajax differs from the plaintiff in *Ferland*, who failed to submit any evidence supporting the inclusion of attorney's fees in the amount in controversy. *See Ferland*, 2021 U.S. Dist. LEXIS 137708 at *9. Given that the value of note was at minimum $71,700, there is nothing to suggest that, at the time of filing, Ajax included attorney's fees as a "transparent attempt to puff up" its amount in controversy over the $75,000 threshold.

In Ajax's response to the Court's order to show cause, it attaches an affidavit from Attorney Longoria explaining legal fees that have accumulated since filing the case. *Longoria Aff.* Namely, the affidavit and corresponding exhibits show that Ajax incurred $3,572.32 in attorney's fees between November 30, 2020, and January 21, 2021, *Pls. Res. to Order*, Attach. 5, *Invoice* (Jan. 26, 2021), an additional $3,515.00 between January 25, 2021, and June 30, 2021, *id.*, Attach. 6, *Invoice* (June 30, 2021), and $2,979 between July 12, 2021, and July 30, 2021. *Id.*, Attach. 7, *Invoice* (July 30, 2021). Ajax also projects $3,500 in auction fees, for an estimated total of $14,219.03 recoverable in legal and foreclosure fees at the time of the sale. *Rust Aff.*

As discussed above, it is permissible for the Court to consider these costs even though the affidavit was filed only upon the Court challenging jurisdiction. Ajax's claim is therefore $71,700 (at minimum) plus an additional $9066.32 for already-incurred attorney's fees, totaling $80,766.32. *See Raymond*, 527 F. Supp. 2d at 164 (denying a motion to remand a claim of $72,218 and $2,782 in attorney's fees, totaling $75,000 exactly, "[g]iven than one extra dollar of attorney's fees would place her over the $75,00 threshold" making it a "legal certainty that she would meet the amount in controversy requirement"). Even without including projected auction fees, it is "clear to a legal certainty" that Ajax satisfies the amount in controversy of more than $75,000.

While Ajax meets the amount in controversy based on the inclusion of attorney's fees as alleged in its affidavit, the Court is not satisfied with the accuracy of this affidavit. Exhibit Two of the affidavit states that Ajax's attorneys billed $645

16

for "[c]ommunications with defendant's counsel regarding settlement, preparation of Agreed Judgment, forwarding of Agreed order to defendant's counsel for execution, and filing of same with the Court." *Pls. Res. to Order*, Attach. 6, *Invoice Number 122811*, at 1. However, the Defendants have not appeared in this case and are not represented by counsel, nor did the Court receive any agreed upon order on or around February 11, 2021. While Ajax would meet the amount in controversy requirement even if the $645 billed was eliminated from the affidavit, this glaring error calls into question the accuracy of the rest of the affidavit. Moreover, the Court record should not contain an apparently inaccurate affidavit from counsel. The Court therefore delays issuing a final order until Ajax has reviewed its affidavit to ensure its accuracy and has re-submitted it to the Court.[4]

## IV.  CONCLUSION

The Court DEFERS ruling on Ajax's motion for default judgment until Ajax reviews its affidavit and re-submits an accurate, updated version to the Court within fourteen days.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of September, 2021

---

[4]  The Court wonders whether attorney's fees incurred as a result of responding to the jurisdictional question are properly deemed reasonable future attorney's fees as of the date of filing. If the Plaintiff knew there was a question as to the amount in controversy but for attorney's fees related to addressing the jurisdictional question, the Court doubts that the law would allow a plaintiff to bootstrap jurisdiction. But the Court need not address this issue because it appears that the attorney's fees directly related to proceeding with the foreclosure action in the ordinary course without including the jurisdictional issue are sufficient.